# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* THOMPSON, Minor.

UNPUBLISHED
October 25, 2018

No. 340331
Genesee Circuit Court
Family Division
LC No. 14-130960-NA

Before: MURRAY, C.J., and BORRELLO and RONAYNE KRAUSE, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to the minor child, JT, pursuant to MCL 712A.19b(3)(b)(*i*) (parent caused the physical injury or physical or sexual abuse of the child or a sibling of the child, and the child will likely suffer from injury or abuse if returned to the parent); (b)(*ii*) (parent could have prevented but failed to prevent injury or abuse to the child or a sibling of the child, and the child will likely suffer injury or abuse if returned to the parent); (g) (failure to provide proper care and custody); (j) (reasonable likelihood that child will be harmed if returned to parent); (k)(*iii*) (parent abused the child or a sibling of the child and the abuse included battering, torture, or other severe physical abuse); and (k)(*v*) (parent abused the child or a sibling of the child and the abuse included life-threatening injury). For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

The instant case involving JT is before this Court for a second time after proceedings were conducted in the trial court pursuant to this Court's remand order in *In re Thompson*, 318 Mich App 375, 379; 897 NW2d 758 (2016). Only mother's parental rights to JT are at issue in the instant appeal, although facts involving mother's other children are relevant.

At the time of the initial proceedings involving JT, mother had given birth to five children: ET, J, AT, IB, and JT. J had died in 2006, 14 days after he was born, while sleeping in mother's bed with her. IB had died in 2013, 23 days after he was born. Mother had returned home to her apartment with IB late at night, turned the heat all the way up to 90 degrees, and left IB in his car seat and covered with a blanket. Mother then fell asleep for approximately 8 to 12 hours. It was determined through an autopsy that the cause of IB's death was dehydration due to hyperthermia. Additionally, mother had also attempted to treat ET's ringworm by pouring bleach on his back, following a recommendation that she had discovered on the internet. Mother testified that she had decided to treat the ringworm at home instead of taking ET to a doctor because she "didn't think it was that serious." Mother thought the bleach would help, and she

-1-

was afraid of what would happen if she brought ET in for medical care. The bleach caused what was subsequently determined to be a second-degree chemical burn. However, no medical care was obtained for ET's burn until after the burn was observed by a CPS investigator who requested that ET be given medical treatment. Mother's parental rights to ET and AT were terminated in September 2014.

JT was born after mother's parental rights to ET and AT were terminated. This Court previously set forth the relevant facts related to the initiation of the child-protective proceedings involving JT as follows:

> JT was born in November 2014, and the Department of Health and Human Services (DHHS) immediately filed a petition simultaneously seeking jurisdiction over the child and termination of [mother]'s parental rights. The court authorized the petition on November 19, and JT was placed in unrelated foster care upon his release from the hospital.
>
> On January 23, 2015, the circuit court heard testimony from a Child Protective Services investigator, the foster-care worker assigned to this case, and respondent-mother. At the close of testimony, attorneys for the DHHS and the minor child made closing arguments focused solely on the termination grounds. The court then iterated its findings and determined that termination of respondent's parental rights was supported under several MCL 712A.19b(3) factors. The court also concluded that termination was in JT's best interests.
>
> Only at the close of the court's termination decision was jurisdiction considered. DHHS counsel queried, "Judge, will you make a record in terms of the findings as to jurisdiction . . . [?]" The court replied:
>
>> I'm glad you did. Oftentimes with these cases, we already have jurisdiction, but we didn't. Having found clear and convincing evidence, I don't think there's much question that there is more than a preponderance of evidence that the Court should take jurisdiction in this matter.
>>
>> So, the Court will make a finding that the Court will, in fact, take jurisdiction over the minor child, [JT], in addition to my earlier findings that there should be termination. [*In re Thompson*, 318 Mich App at 376-377 (second and third alterations in original).]

Mother appealed, and this Court vacated the order terminating mother's parental rights to JT because the trial court had failed to conduct an adjudication before reaching a termination decision. *Id.* at 379. This Court explained:

> A review of the hearing transcript reveals that no adjudication trial took place; rather, the court skipped right to termination. It would be a mischaracterization to say that termination occurred at the initial disposition. In order to have an initial disposition, there must first be an adjudication. [*Id.* at 378.]

-2-

This Court remanded the matter to the trial court "for further proceedings consistent with this opinion." *Id*. at 379. This Court's prior opinion was issued on December 15, 2016.

On remand, the trial court conducted a pretrial hearing on February 14, 2017. By this time, mother had given birth to two more children: TT and MT.[1] At the hearing, counsel for mother requested that mother be allowed to begin supervised parenting time with JT pending the scheduled adjudication trial. The trial court denied this request. The trial court subsequently conducted an adjudication trial, after which it ruled that jurisdiction had been established under MCL 712A.2(b)(2). After proceeding to hold separate termination and best-interests hearings, the trial court found that statutory grounds to support termination had been established and that termination was in JT's best interests. The trial court entered an order terminating mother's parental rights to JT. This appeal ensued.

## II. JURISDICTION

Mother first argues that the trial court's jurisdictional ruling was erroneous because it depended almost entirely on the doctrine of anticipatory neglect. Mother essentially argues that this doctrine is problematic because it allows the trial court to obtain jurisdiction based solely on a parent's past conduct without regard for current circumstances.

This Court reviews a trial court's "decision to exercise jurisdiction for clear error in light of the court's findings of fact." *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004).

"Child protective proceedings are generally divided into two phases: the adjudicative and the dispositional." *In re Brock*, 442 Mich 101, 108; 499 NW2d 752 (1993). During the adjudicative phase, the trial court determines whether it may exercise jurisdiction over the child. *Id*. If jurisdiction is acquired, the trial court proceeds to the dispositional phase to determine any actions to be taken on the child's behalf. *Id*.

To obtain jurisdiction at the adjudication phase, "the factfinder must determine by a preponderance of the evidence that the child comes within the statutory requirements of MCL 712A.2." *Id*. at 108-109. "Only allegations contained in the original, or amended, petition can be the basis for jurisdiction." *In re SLH*, 277 Mich App 662, 671; 747 NW2d 547 (2008). The respondent-parent may demand a trial at this phase, where "the respondent is entitled to a jury, MCR 3.911(A), the rules of evidence generally apply, MCR 3.972(C), and the petitioner has the burden of proving by a preponderance of the evidence one or more of the statutory grounds for jurisdiction alleged in the petition, MCR 3.972(E)." *In re Sanders*, 495 Mich 394, 405; 852 NW2d 524 (2014). If allegations against the parent involving abuse or neglect have been proven either by plea or trial, then the adjudicated parent is unfit. *Id*. Before the state may infringe the constitutionally protected relationship between a parent and child, due process requires a specific adjudication of that particular parent's unfitness. *Id*. at 422.

---

[1] TT and MT also are not subjects of the instant proceedings.

The trial court indicated that it was exercising jurisdiction based on MCL 712A.2(b)(2), which stated as follows at the time of the trial court proceedings now at issue on appeal:

The court has the following authority and jurisdiction:

\* \* \*

(b) Jurisdiction in proceedings concerning a juvenile under 18 years of age found within the county:

\* \* \*

(2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in. [MCL 712A.2(b), as amended by 519 PA 2014.]

The concept of anticipatory neglect or anticipatory abuse may be relied on to invoke the court's jurisdiction under MCL 712A.2(b). *In re Powers*, 208 Mich App 582, 589; 528 NW2d 799 (1995), superseded in part by statute on other grounds as stated in *In re Jenks*, 281 Mich App 514, 517 n 2; 760 NW2d 297 (2008). "The doctrine of anticipatory neglect recognizes that '[h]ow a parent treats one child is certainly probative of how that parent may treat other children.' " *In re AH*, 245 Mich App 77, 84; 627 NW2d 33 (2001) (alteration in original), quoting *In re LaFlure*, 48 Mich App 377, 392; 210 NW2d 482 (1973). The doctrine of anticipatory neglect further extends to protect a particular child on the basis of the parent's past treatment of other children that occurred before that particular child was born because the parent's past treatment of another child gives rise to a fear that a subsequent child will also be neglected or abused. *In re AH*, 245 Mich App at 84. Accordingly, "[a] child may come within the jurisdiction of the court solely on the basis of a parent's treatment of another child," and "[a]buse or neglect of the second child is not a prerequisite for jurisdiction of that child [or] application of the doctrine of anticipatory neglect." *In re Gazella*, 264 Mich App 668, 680-681; 692 NW2d 708 (2005), superseded in part on other grounds in MCL 712A.19b(5).

Furthermore, this Court in *In re AH*, 245 Mich App at 83, 84 & n 1, recognized that MCL 722.638 requires the department to commence child protective proceedings under MCL 712A.2(b) against parents who have previously had their parental rights involuntarily terminated. This Court explained that the "Legislature therefore effectively codified the doctrine of anticipatory neglect" and that the statute also includes the additional requirement that there be a risk of harm to the child. *Id*. At the time of the trial court proceedings now at issue on appeal, MCL 722.638 provided in pertinent part as follows:

(1) The department shall submit a petition for authorization by the court under section 2(b) of chapter XIIA of 1939 PA 288, MCL 712A.2, if 1 or more of the following apply:

\* \* \*

(b) The department determines that there is risk of harm to the child and either of the following is true:

(i) The parent's rights to another child were terminated as a result of proceedings under section 2(b) of chapter XIIA of 1939 PA 288, MCL 712A.2, or a similar law of another state.

* * *

(2) In a petition submitted as required by subsection (1), if a parent is a suspected perpetrator or is suspected of placing the child at an unreasonable risk of harm due to the parent's failure to take reasonable steps to intervene to eliminate that risk, the department shall include a request for termination of parental rights at the initial dispositional hearing as authorized under section 19b of chapter XIIA of 1939 PA 288, MCL 712A.19b. [MCL 722.638, as amended by 2010 PA 12.]

In this case, the petition alleged in pertinent part that mother's parental rights to ET and AT had been terminated in September 2014, that one of mother's children (J) had died as an infant while sleeping in mother's bed with her, and that another child of mother's (IB) had died as an infant when mother fell asleep and left the child in a car seat for an extended period of time after turning up the heat in her apartment. The trial court determined that jurisdiction was proper because the allegations related to the previous terminations and infant deaths had been established by a preponderance of the evidence.

There was evidence introduced at mother's adjudication trial, including her own admissions under oath, that each of these incidents occurred. There is no dispute that mother's parental rights to ET and AT were terminated, and those termination rulings are not at issue in the instant appeal. With respect to J's death, mother testified that he was next to her in her bed and that she woke up to find him deceased. According to mother, J only spent one day with her after he was discharged from the hospital. Mother testified that she was unaware of safe sleep procedures and that she now knew that babies were supposed to sleep by themselves, on their backs, and with no other items in the crib. Mother admitted that she had used bad judgment with respect to J's death. With respect to IB's death, mother testified that she returned home to her apartment with IB, turned the heat up to 90 degrees, and left him in his car seat and covered in a blanket while she slept for approximately 8 to 12 hours. The deputy medical examiner who performed the autopsy on IB testified that he determined that the cause of IB's death was dehydration due to hyperthermia and that the manner of death was accident.

Under the doctrine of anticipatory neglect, the fact that the deaths of two of mother's children were attributable to mother's caretaking decisions was probative of the risk of harm that JT would face while in mother's care. *In re AH*, 245 Mich App at 84. The trial court did not err by relying on the doctrine of anticipatory neglect to support its jurisdictional finding because this doctrine may properly be relied on to support jurisdiction based solely on a parent's treatment of another child even without evidence of additional abuse or neglect directed specifically at the child at issue (in this case, JT). *In re Gazella*, 264 Mich App at 680-681. In light of the deaths of J and IB that occurred under the circumstances of mother's failure to appropriately ensure that

a proper sleeping environment existed for those children, a preponderance of the evidence established that mother, at a minimum by reason of neglect, created a home or environment that was unfit for JT to live in. MCL 712A.2(b)(2). The fact that the incidents involving J and IB occurred before JT was born does not prevent the application of the doctrine of anticipatory neglect for purposes of establishing jurisdiction. *In re AH*, 245 Mich App at 84. Therefore, the trial court did not clearly err by exercising jurisdiction over JT based on its determination that allegations in the petition bringing the child within the statutory requirements of MCL 712A.2 had been established by a preponderance of the evidence. *In re Brock*, 442 Mich at 108-109; *In re Sanders*, 495 Mich at 405.

Nonetheless, mother argues that it was erroneous for the trial court to rely entirely on the doctrine of anticipatory neglect without properly considering mother's current circumstances, such as the fact that mother retained custody of two of her children.

First, mother relies on *In re MU*, 264 Mich App 270, 279; 690 NW2d 495 (2004), for the proposition that a trial court must consider the child's circumstances at the time the petition was filed when making its jurisdiction determination because the jurisdiction statute "speaks in the present tense." However, *In re MU* does not actually advance mother's argument. In that case, the respondent-father argued that the petitioner could not "prove that 'criminality' rendered the minor children's home or environment unfit on the date the supplemental petition was filed, MCL 712A.2(b)(2), because the respondent had not been convicted of a crime at that time and the trial court lack[ed] subject-matter jurisdiction to make a finding of criminality." *Id*. at 273, 277. The *In re MU* Court acknowledged that "[t]he statute speaks in the present tense, and, therefore, the trial court must examine the child's situation at the time the petition was filed." *Id*. at 279. But in ultimately rejecting the respondent's argument, the *In re MU* Court explained:

> Contrary to the respondent's assertions, in order for the trial court to assume jurisdiction over the minor children on the basis of criminality, the petitioner does not need to prove that the respondent was convicted of a crime. "[T]he state of being criminal" differs from the state of being prosecuted and convicted of a criminal offense because an activity can be criminal in nature regardless of whether the violated criminal law is enforced. The petitioner, therefore, must demonstrate by a preponderance of the evidence only that the respondent engaged in criminal behavior. [*Id*. (alteration in original).]

Essentially, the issue in *In re MU* involved whether an event that *had not yet occurred and might never occur*—i.e., a conviction—had any bearing on the analysis regarding whether the respondent-father's home was unfit. While this Court's conclusion and reasoning in *In re MU* tacitly acknowledges that a trial court cannot reach a jurisdiction decision based on an unknown future event and must consider only the present situation, it is also apparent from this Court's reasoning that consideration of the present circumstances necessarily includes consideration of past events—i.e., evidence that the respondent-father engaged in criminal behavior at some point in the past. Likewise in this case, there was evidence demonstrating that it was the present reality that two of mother's children had died while in her care and under circumstances where she failed to follow safe sleep procedures for infants. As previously discussed, these facts properly supported the trial court's exercise of jurisdiction under the doctrine of anticipatory neglect. *In re MU* does not dictate a contrary conclusion.

Mother also relies on *In re LaFlure*, 48 Mich App at 391-392 for the proposition that a trial court in termination proceedings on remand from an appellate court must consider the totality of the circumstances before it, including circumstances that occurred after the child was taken into temporary custody. The rationale for this concept was expressed by this Court as follows: "Since a parent's fitness is not a static concept, much can happen in 6 months to reflect on that fitness. Therefore, evidence of appellant's activities from January 5, 1971, until July 1, 1971, was relevant to her fitness as a mother as of July 1, 1971." *Id*. at 391. However, the remand that was ordered by this Court in *In re LaFlure* was for purposes of determining whether the state could "justify by clear and convincing evidence either retention of temporary custody of [the minor child] or termination of appellant's parental rights." *Id*. at 392. The *In re LaFlure* Court further noted that the probate court's "original finding of neglect and its assumption of temporary custody are not challenged." *Id*. at 384-385. Thus, the language in *In re LaFlure* relied on by mother pertains to disposition rather than the adjudication decision. Moreover, this language does not somehow exclude consideration of past events. There is no language in *In re LaFlure* to support the proposition that the doctrine of anticipatory neglect may not be relied upon as the sole basis for *jurisdiction*.[2]

Additionally, Mother further argues that the doctrine of anticipatory neglect should not be used as the sole basis for exercising jurisdiction because it allows for procedure by presumption and focuses only on past bad conduct. In support of this argument, mother relies on, *In re Gach*, 315 Mich App 83; 889 NW2d 707 (2016), *Sanders*, 495 Mich 394, and *Stanley v Illinois*, 405 US 645; 92 S Ct 1208; 31 L Ed 2d 551 (1972). All three of these cases are clearly distinguishable from the instant case.

First, *In re Gach* is inapplicable to mother's jurisdictional challenge because that case only involved issues concerning the statutory grounds supporting termination in the dispositional phase and did not involve any issues related to jurisdiction in the adjudicative phase. *In re Gach*, 315 Mich App at 93-102. Consistent with *In re LaFlure*, there is no language in *In re Gach* prohibiting the doctrine of anticipatory neglect from serving as the sole basis for *jurisdiction*.[3]

Next, our Supreme Court held in *Sanders*, 495 Mich at 422, that the "one-parent doctrine" was unconstitutional and that due process mandated a specific adjudication of a particular parent's unfitness before the constitutionally protected parent-child relationship could be infringed. In the instant case, however, mother received a specific adjudication of her unfitness. Mother's unfitness was not merely "presumed"; rather the trial court found that she

---

[2] Furthermore, the *In re LaFlure* Court made clear that "[h]ow a parent treats one child is certainly probative of how that parent may treat other children" for purposes of the termination decision, ordering that the court on remand should receive evidence of how the mother had treated another one of her children, other than the child who was the subject of the case on appeal. *In re LaFlure*, 48 Mich App at 392.

[3] Notably, the only statutory ground that was held to be unconstitutional in *In re Gach* was the version of MCL 712A.19b(3)(*l*) that was in effect at the time. *In re Gach*, 315 Mich App at 100-101. This statutory ground is not at issue in the instant case.

was unfit for purposes of jurisdiction based on her own actions with respect to her other children. Thus, the holding in *Sanders* is also inapplicable to mother's jurisdictional challenge in this case.

Finally, *Stanley* involved an Illinois statutory scheme which permitted the removal of a child from the child's father without holding an individualized hearing to determine the father's parental fitness if the child's mother died and the father was never married to the mother. *Stanley*, 405 US at 646-647, 649-650. The *Stanley* Court explained that the relevant statute

> empower[ed] state officials to circumvent neglect proceedings on the theory that an unwed father is not a "parent" whose existing relationship with his children must be considered. . . .
>
> Under Illinois law, therefore, while the children of all parents can be taken from them in neglect proceedings, that is only after notice, hearing, and proof of such unfitness as a parent as amounts to neglect, an unwed father is uniquely subject to the more simplistic dependency proceeding. By use of this proceeding, the State, on showing that the father was not married to the mother, need not prove unfitness in fact, because it is presumed at law. Thus, the unwed father's claim of parental qualification is avoided as "irrelevant." [*Id*. at 649-650.]

The *Stanley* Court held that due process entitled the unwed father "to a hearing on his fitness as a parent before his children were taken from him and that, by denying him a hearing and extending it to all other parents whose custody of their children is challenged, the State denied [the unwed father] the equal protection of the laws guaranteed by the Fourteenth Amendment." *Id*. at 649.

In the instant case, mother was not denied a hearing requiring that her unfitness be proven. Rather, she received multiple hearings, including as applicable to her jurisdictional challenge on appeal, an adjudication trial at which it was determined that mother's home environment was unfit based on a showing that two of her children had died as infants while in her care and under circumstances where she failed to properly ensure a safe sleeping environment. Pursuant to the doctrine of anticipatory neglect, the trial court could permissibly rely on these incidents to find that it could exercise jurisdiction. *In re Gazella*, 264 Mich App at 680-681. Moreover, a trial court's finding that it should exercise jurisdiction does not necessarily result in removal of custody, and parental rights can only be permanently terminated after additional proceedings are held where the statutory grounds for termination are proven by clear and convincing evidence. See *In re Brock*, 442 Mich at 111-112; see also MCL 712A.19b(3). These additional termination proceedings were held in the instant case before mother's parental rights to JT were terminated. Accordingly, *Stanley* is distinguishable from this case and does not dictate an outcome different from the one reached above.

Mother next argues that the trial court erred by taking jurisdiction based on the conditions of mother's home because the decision whether jurisdiction is appropriate depends on the fitness of the home where the child actually resides and JT was placed in foster care rather than with mother. Initially, we note that mother's appellate argument makes no logical sense because it implies that once a child is removed from a parent and placed in foster care pursuant to a court order, the foster home must be unfit in order for the trial court to exercise jurisdiction once the adjudication is held. Clearly, this is not the law.

Nonetheless, in support of this argument, mother first relies on *In re Curry*, 113 Mich App 821; 318 NW2d 567 (1982). However, in addition to the fact that we are not bound by this decision that was issued before November 1, 1990, MCR 7.215(J)(1), we find *In re Curry* to be distinguishable from the instant case. *In re Curry* did not involve a situation, such as the instant one, where the child had originally been placed in the care of individuals other than the respondent-parent in the first instance pursuant to a court order in the context of proceedings under MCL 712A.2(b). See *In re Curry*, 113 Mich App at 823-824, 828-829 (the parents of the minor children, both of whom were incarcerated, had previously placed the minor children in the custody of relatives; and there was no evidence of abuse, neglect, other improper care, or that the parents' criminality had any effect on the children or caused their living environment to be unfit). Thus, *In re Curry* is inapplicable to the facts of the instant case. We also find the unpublished cases cited by mother to be distinguishable and unpersuasive. Because we are not bound by unpublished decisions of this Court, MCR 7.215(C)(1), we decline to address the unpublished caselaw cited by mother any further.

Finally, mother also argues that the trial court's additional concerns related to mother's driving issues, the unknown identities of the fathers of some of mother's children, and mother's apparent involvement in prostitution were insufficient to support jurisdiction and had no effect on JT. However, viewing the trial court's oral ruling as a whole, it seems that the trial court was primarily relying on mother's past treatment of JT's siblings and the doctrine of anticipatory neglect to support its jurisdiction decision. Although the trial court also indicated that these other issues were concerning, it is not clear that they were certainly part of its jurisdictional ruling. These additional concerns related to mother's driving and the unknown identities of some of the children's fathers due to prostitution were not alleged in the petition with the exception of a general allegation that mother did not know the full name of JT's father. To the extent that the trial court relied on facts that were not alleged in the petition to support its jurisdictional findings, it erred. *In re SLH*, 277 Mich App at 671 ("Only allegations contained in the original, or amended, petition can be the basis for jurisdiction."). However, for the reasons previously discussed, a preponderance of the evidence supported the trial court's conclusion that a statutory ground for jurisdiction had been established based on mother's past treatment of JT's siblings, which was sufficient in its own right to support jurisdiction. In other words, there was no need for the trial court to consider these additional concerns and doing so had no impact on the propriety of its decision to exercise jurisdiction in this case. Thus, any error with respect to the additional concerns cited by the trial court was harmless. See MCR 2.613(A); *In re Martin*, 316 Mich App 73, 84-85; 896 NW2d 452 (2016), citing MCR 2.613(A) (applying harmless error analysis and noting that harmless error analysis had previously been applied in the termination-of-parental-rights context).

In sum, the doctrine of anticipatory neglect may properly be relied upon to support a finding of jurisdiction, and the trial court's jurisdictional ruling was not clearly erroneous.

### III. DENIAL OF PARENTING TIME

Next, mother argues that the trial court erred by denying her request for supervised parenting time with JT. Mother further argues that denying her the opportunity to demonstrate her ability to interact with the child through parenting time visits constituted a denial of due process.

Because mother made a request at the February 14, 2017 pretrial hearing for the trial court to grant her supervised parenting time with JT, which was denied by the trial court, mother preserved her appellate challenge to the trial court's denial of supervised parenting time. *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). However, to the extent that mother also bases her appellate argument on due process grounds, this argument is unpreserved because mother did not raise this argument below in arguing that supervised parenting time should be granted. *Id*.

This issue regarding the trial court's denial of parenting time involves the application of statutes and court rules, which this Court reviews de novo. *In re Laster*, 303 Mich App 485, 487; 845 NW2d 540 (2013). The question whether child protective proceedings complied with the requirements of due process is also generally reviewed de novo. *In re TK*, 306 Mich App at 703. But "[a]n unpreserved claim of constitutional error is reviewed for plain error affecting substantial rights." *In re Williams*, 286 Mich App 253, 274; 779 NW2d 286 (2009). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011) (quotation marks and citation omitted).

In this case, there is no dispute that the petition contained a request for termination of mother's parental rights at the initial disposition. MCL 712A.19b(4) provides as follows:

> (4) If a petition to terminate the parental rights to a child is filed, the court may enter an order terminating parental rights under subsection (3) at the initial dispositional hearing. If a petition to terminate parental rights to a child is filed, the court may suspend parenting time for a parent who is a subject of the petition.

Additionally, MCR 3.977(D) provides that "[i]f a petition to terminate parental rights to a child is filed, the court may suspend parenting time for a parent who is a subject of the petition." As this Court has explained,

> The suspension of parenting time once a petition to terminate parental rights is filed requires no finding of harm and is presumptively in the child's best interest, because, among other reasons, it protects infants or young children from the greatly increased risk—brought about by a parent facing termination of parental rights—of being kidnapped during parenting time and removed from the state; it also protects older children from being told to run away and where and when to meet the parent so that they can leave the state together. [*In re Laster*, 303 Mich App at 489.]

Therefore, the trial court did not err by denying mother's request for parenting time once this case was remanded back to the trial court because a petition to terminate mother's parental rights to JT had been filed. MCL 712A.19b(4); MCR 3.977(D).

Next, mother relies on *In re Rood*, 483 Mich 73; 763 NW2d 587 (2009) (opinion by CORRIGAN, J.), in support of her appellate argument that the trial court's decision constituted a violation of due process.[4] However, that case is inapposite because it did not involve a request for termination of parental rights at the initial disposition; in that case, reunification rather than termination was the initial goal. *Id*. at 79-80, 82, 111. "Petitioner . . . is not required to provide reunification services when termination of parental rights is the agency's goal." *In re HRC*, 286 Mich App 444, 463; 781 NW2d 105 (2009). Accordingly, mother has also failed to establish that a plain error occurred with respect to her due process claim. *In re VanDalen*, 293 Mich App at 135.

## IV. STATUTORY GROUNDS

Next, mother argues that the statutory grounds for termination were not established by clear and convincing evidence.

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App at 139. This Court "review[s] for clear error [] the court's decision that a ground for termination has been proven by clear and convincing evidence . . . ." *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000), abrogated by statute on other grounds as stated in *In re Moss*, 301 Mich App 76, 83, 88; 836 NW2d 182 (2013). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App at 80 (quotation marks and citation omitted).

MCL 712A.19b(3)(b)(*i*) provides:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:
>
> (*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

In this case, termination of mother's parental rights to JT was proper under MCL 712A.19b(3)(b)(i). There was overwhelming evidence, including mother's admissions, that three of JT's siblings suffered obvious, severe physical injury due to acts of mother. J died while

---

[4] We decline to address the unpublished decision cited by mother because it is not binding, MCR 7.215(C)(1), and is unpersuasive nonetheless.

sleeping in mother's bed with her, after having spent one day out of the hospital and in mother's care. IB died under even more egregious circumstances: mother left him in his car seat for approximately 8 to 12 hours after she turned the heat in the apartment up to 90 degrees and fell asleep, causing IB to die of hyperthermia and dehydration. ET suffered a second-degree chemical burn as a result of mother's attempt to treat his ringworm by pouring bleach on ET's skin. There was also evidence that allegations of medical neglect were substantiated related to mother's failure to follow medical recommendations for AT.

The seriousness of mother's poor judgment with respect to the two deaths, the bleach incident, and her failure to attend to AT's medical needs indicates that a child in mother's care is subject to a serious risk of harm from her poor judgment. Although there was evidence that mother participated in, and graduated from, the Baby Court program[5] with respect to TT and that TT and MT were in mother's custody during the instant proceedings below, there was also evidence in the instant proceedings that mother was not always honest and forthcoming with workers and service providers during her involvement in the Baby Court program and that mother returned to her habitual ways of exercising bad judgment with respect to the care of her children by indicating a willingness to give TT an alcohol bath rather than take him to the hospital for medical treatment and by appearing to let TT ride in a vehicle in an improperly installed car seat. There was further evidence that mother was dishonest and evasive when under oath during the instant proceedings with respect to the identities of the fathers of some of her children and her apparent involvement in prostitution. Thus, regardless of the outcome reached in the Baby Court with respect to TT, it is apparent that the Baby Court had incomplete information and that mother did not sufficiently benefit from her services. The fact that a respondent's parental rights were not terminated with respect to some of the respondent's children does not prevent a trial court from terminating the respondent's parental rights to another child. See *In re Kantola*, 139 Mich App 23, 28-29; 361 NW2d 20 (1984). In the instant case, JT was the only child at issue before the trial court, and neither of the two children who were still in mother's custody at the time of the instant trial court proceedings were formally involved in those proceedings. Additionally, although mother denied actually following through on giving the alcohol bath to TT and denied actually driving while TT was in the vehicle, this Court "accords deference to the special opportunity of the trial court to judge the credibility of the witnesses." *In re Fried*, 266 Mich App 535, 541; 702 NW2d 192 (2005).

The seriousness of the harm that mother's children suffered as a result of her failure to adequately care for them—two infant deaths and a second-degree chemical burn—along with mother's history showing that she continued to demonstrate new ways of exercising poor parenting judgment causing injury, supports the conclusion that there is a reasonable likelihood that JT would suffer harm if returned to mother's care. Mother's tendency to exercise poor parenting judgment is strongly evidenced by her historical record, and the circumstances of these

---

[5] The witnesses below typically referred to the Genesee County Infant and Toddler Treatment Court as the "Baby Court." Accordingly, we also use the term "Baby Court" as an abbreviation for this program. The Baby Court is a specialty court for families with infants and toddlers in foster care.

incidents alleged in the petition were proven by clear and convincing evidence in the trial court below.

The conclusion that JT would be subject to a reasonable likelihood of harm if returned to mother's care is further supported by this Court's reasoning in *In re Hudson*, 294 Mich App 261; 817 NW2d 115 (2011). In that case, the respondent-mother had engaged in sexual intercourse numerous times with her 14-year-old biological son, with whom she had recently reconnected after having given him up for adoption at birth. *Id*. at 263. The respondent was sentenced to a term of imprisonment after being convicted of first-degree criminal sexual conduct based on her sexual abuse of her biological son, and the respondent's parental rights to her other minor children were ultimately terminated. *Id*. This Court concluded that termination of the respondent's parental rights was proper under MCL 712A.19b(3)(b)(*i*), reasoning as follows:

> Respondent contends that no evidence was presented that any of the children would suffer from injury or abuse if placed with her, considering that she will be incarcerated until at least 2019. However, the reason for respondent's incarceration was her sexual abuse of her 14-year-old biological son. Evidence of how a parent treats one child is evidence of how he or she may treat the other children. *In re AH*, 245 Mich App 77, 84; 627 NW2d 33 (2001). It is thus appropriate for a trial court to evaluate a respondent's potential risk to the other siblings by analyzing how the respondent treated another one of his or her children, albeit a child the respondent gave up for adoption. Though no legal relationship exists in such a situation, the reality is that respondent is still the biological mother of the child who was given up for adoption and that child is the biological half-sibling of the respondent's other children. Were respondent's other children at less risk because A. was merely their biological and not their legal sibling? Respondent's behavior with A. was so egregious as to defy comprehension. It demonstrated more than a mere lack of insight and poor judgment. [*In re Hudson*, 294 Mich App at 266.]

In this case, as in *In re Hudson*, the egregious nature of the injuries to mother's children that resulted from her extremely poor judgment supported the conclusion that JT would face a reasonable likelihood of suffering harm if placed in mother's care.

Therefore, because review of the record does not lead to a firm conviction that a mistake was made, the trial court did not clearly err by terminating mother's parental rights to JT under MCL 712A.19b(3)(b)(*i*). *In re Moss*, 301 Mich App at 80. Because at least one statutory ground existed to properly support termination, we need not consider the additional grounds relied upon by the trial court. *In re HRC*, 286 Mich App at 461.

## V. BEST INTERESTS

Finally, mother argues that termination was not in JT's best interests.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "[W]hether termination of

parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App at 90. This Court reviews a trial court's best-interests determination for clear error. *In re Trejo*, 462 Mich at 356-357.

At the best-interest stage, the focus is on the child and not the parent. *In re Moss*, 301 Mich App at 87. "In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App at 41-42 (citations omitted). A court may also consider the length of time that the minor child was in foster care or placed with relatives and the likelihood that the child could be returned to the parents' home within the foreseeable future. *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012). The child's well-being while in foster care and the possibility of adoption are also proper considerations. *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014).

In this case, JT had never resided with mother and had lived with the same foster family since he was five days old. JT has thrived in the care of his foster parents, who had sought to adopt him, and there was evidence that JT had a strong bond to his foster parents who he viewed as his mother and father. In contrast, there was evidence that he did not recognize mother. This case has been ongoing essentially throughout JT's entire life. He is now almost four years old and deserves permanency and stability. Accordingly, the trial court did not clearly err by determining that termination was in JT's best interests. *In re Olive/Metts Minors*, 297 Mich App at 41-42; *In re Frey*, 297 Mich App at 248-249; *In re White*, 303 Mich App at 714.

Affirmed.


/s/ Christopher M. Murray
/s/ Stephen L. Borrello
/s/ Amy Ronayne Krause