PEOPLE v BROWN

(IN THE MATTER OF BROWN)

1. PARENT AND CHILD—PROBATE COURT—TERMINATION OF RIGHTS—
   RIGHT TO COUNSEL.

   Parents, guardian, or custodian of a child shall have a right to
   retained counsel and also to court-appointed counsel at hear-
   ings in probate court which may involve termination of their
   rights; and it shall be the duty of the court to so advise them at
   the first hearing before the court (JCR 1969, 6.1).

2. PARENT AND CHILD—PROBATE COURT—TERMINATION OF RIGHTS—
   RIGHT TO COUNSEL—WAIVER.

   Counsel shall be appointed on a probate court's own motion to
   represent the parents, guardian, or custodian of a child,
   charged with an offense against the child at hearings which
   may involve termination of their rights when legal aid or
   public defender counsel is not available, and they are finan-
   cially unable to employ counsel to represent themselves, unless
   counsel is waived as provided by court rule (JCR 1969, 6.2,
   6.3[a][2][b]).

3. PARENT AND CHILD—PROBATE COURT—TERMINATION OF RIGHTS—
   EVIDENCE—ADMISSIBILITY.

   Absent a valid plea in confession only competent, relevant, and
   material evidence is admissible at the adjudicative phase of a
   hearing in probate court which involves the termination of
   parental rights, subject to the general rules of evidence in civil
   proceedings (JCR 1969, 8.3[a]).

4. PARENT AND CHILD—PROBATE COURT—TERMINATION OF RIGHTS—
   EVIDENCE—HOMOSEXUAL RELATIONSHIP.

   There was sufficient competent evidence introduced at a probate
   court hearing for the termination of the parental rights of two
   mothers to support a finding that the women were engaged in a
   lesbian relationship, where a state police trooper testified re-
   garding admissions of the mothers about the relationship and

REFERENCE FOR POINTS IN HEADNOTES
[1-5] 59 Am Jur 2d, Parent and Child §§ 8-25.

the prosecutor indicated that one of the mothers had telephoned him and made remarks during the conversation that supported the existence of such a relationship.

5. PARENT AND CHILD—PROBATE COURT—TERMINATION OF RIGHTS—
   HOMOSEXUAL RELATIONSHIP—EVIDENCE—UNFIT HOME.

   A probate court improperly terminated the parental rights of two women who resided together along with their respective minor children because of the involvement of the women in a homosexual relationship where there was insufficient evidence to support a finding that the relationship rendered their home an unfit place for their children to live in.

Appeal from Lapeer, Norman A. Baguley, J. Submitted Division 2 June 20, 1973, at Lansing. (Docket No. 15341.) Decided September 6, 1973.

The parental rights of Eunice Salem (Brown) were terminated by court order as to Mae Brown, Norman Brown, Patrick Brown, Joyce Brown, and Allen Brown, and the parental rights of Arlene Smith were terminated by court order as to Timothy Smith and Carl Smith. Eunice Salem (Brown) and Arlene Smith appeal on leave granted. Reversed and remanded.

*Martin E. Clements,* Prosecuting Attorney, for petitioner.

*Hayes & Kittendorf,* for appellants.

Before: T. M. BURNS, P. J., and McGREGOR and VAN VALKENBURG,* JJ.

McGREGOR, J. In this child custody case, appellants raise two substantial issues: (1) whether the appellants have been denied their parental rights without due process of law, and (2) whether the

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

statute giving the probate court jurisdiction over neglected children is void for vagueness.

The initial proceedings in this matter were instituted in probate court under MCLA 712A.2; MSA 27.3178(598.2) by petitions alleging that the children involved fell within the jurisdiction of the court under section (b)(2) of the act, which provides that the probate court shall have jurisdiction over any child in the county "whose home or environment, by reason of neglect, cruelty, drunkenness, criminality or depravity on the part of a parent, guardian or other custodian, is an unfit place for such child to live in".

There are two sets of children involved in this case, the Smith children and the Brown children. According to the allegations in the petitions, the home was rendered unfit because the mothers were living together in a state of lesbianism which created an immoral atmosphere. A hearing was held on May 13, 1970, at which it was represented to the court that the families were no longer living together. The probate judge indicated that he believed that the court should take jurisdiction but he continued custody with the mothers on the condition that they live apart. The written order of the court omitted the condition that the women live apart.

On June 5, 1970, another hearing was held, at which an officer of the Michigan State Police testified that on June 3, 1970, he was called to the Smith home where there had been some kind of a fight, and that Mrs. Brown had tried to kill herself. Unfortunately, the trooper's testimony is almost entirely subject to objections, either as hearsay evidence or that the trooper lacked personal knowledge of the facts to which he was testifying. At the conclusion of this hearing the probate court

ordered the children placed in foster boarding homes.

By an order entered on June 20, 1970, the custody of the Brown children was awarded to the maternal grandparents. After a hearing on July 15, 1970, custody of the Smith children was awarded to their father.

A hearing involving only the Brown children was held on August 5, 1970, at which Mrs. Brown was represented by court-appointed counsel, and at which it was indicated that Mrs. Brown consented that the grandparents have custody of her children. At another hearing on June 22, 1971, it developed that the grandparents were unable to continue their custody of the children because of illness, and the court restored custody of the children to their mother.

On December 30, 1970, a hearing concerning only the Smith children was held, at which it was shown that Mrs. Smith had taken her children to her home. After a subsequent hearing on February 9, 1971, the court restored custody of the Smith children to their mother.

On October 29, 1971, a hearing was held involving both sets of children, at which both women were represented by the same attorney. When it was shown that the families were again living together, the court ordered that the children be placed in foster homes. This probate order was appealed to the circuit court, which affirmed the order, after hearing the matter on the probate court record. Mrs. Smith and Mrs. Brown appeal to this Court on leave granted.

Appellants first submit that they were deprived of their parental rights without due process of law. A more specific statement of appellants' conten-

tions in this regard appears in their brief, as follows:

"Three subjacent facets of 'due process' are proposed for the court's consideration, *viz.*:

"1. Were the respondents entitled to counsel at the determinative proceedings of May 13, 1970?

"2. Were the allegations propounded by the prosecutor proven?

"3. Was the order of the probate court terminating custody the appropriate consequence of the proceedings?"

The answer to the first question is clear. The mothers were entitled to counsel at the May 1970 hearing.

"The child, his parents, guardian, or custodian shall have a right to retained counsel and also to court-appointed counsel as provided in this rule; it shall be the duty of the court to so advise them at the first hearing before the court." JCR 1969, 6.1.

With regard to Mrs. Smith, no right-to-counsel problem exists; she was represented. Mrs. Brown had been represented by the same attorney but, at the hearing, he stated that he was withdrawing as Mrs. Brown's counsel and was representing only Mrs. Smith. The court did not inform Mrs. Brown of her right to appointed counsel, if indigent. Since she later was represented by appointed counsel, it seems likely that she was indigent at that time. There was no waiver of counsel as provided in JCR 1969, 6.2 and JCR 1969, 6.3(A)(2)(b):

"Unless waived as provided by Rule 6.2, counsel shall be appointed on the court's own motion to represent the parents, guardian, or custodian of the child charged with offense against the child at hearings which may involve termination of their rights when legal aid or public defender counsel is not available, and they are

financially unable to employ counsel to represent themselves."

It seems clear that Mrs. Brown was denied her rights under the court rule and that Mrs. Smith was not.

Concerning the question of whether the prosecutor proved his case, appellants stress the fact that there was no testimony that the women were observed in homosexual activity. In evaluating this contention, the two-step nature of these proceedings is of some importance. First, a determination must be made that the jurisdictional facts exist. Second, if such facts exist, a proper order of disposition must be made. *In re Franzel,* 24 Mich App 371; 180 NW2d 375 (1970). The first step of these proceedings is referred to in the court rules as the adjudicative phase.

"In absence of a valid plea in confession only competent, relevant, and material evidence is admissible at the adjudicative phase, subject to the general rules of evidence in civil proceedings." JCR 1969, 8.3(A).

Thus, if the finding that the court had jurisdiction is to be upheld, the record must contain sufficient evidence, admissible under the ordinary rules of evidence, to support the probate court's finding. The record is clear that competent evidence was introduced to support a finding that the mothers were involved in a homosexual relationship.

The state police trooper testified that, on January 3, 1970, he was called to the Smith residence because Mrs. Brown had allegedly assaulted Mrs. Smith with a rifle. On January 4, 1970, he returned to the residence and talked to Mrs. Brown. At that time Mrs. Brown admitted the assault and stated that she had tried to kill herself, Mrs. Smith, and the children, and that she had at-

tempted suicide. These statements are clearly hearsay, but it seems equally clear that they are admissions.

When asked if she was living in a state of lesbianism, Mrs. Brown stated, "So you know about it", and then stated that she wanted to break off the relationship. Again, it seems that this testimony would be admissible as an admission.

The trooper also testified as follows, regarding a note written by Mrs. Smith to Mrs. Brown:

"[S]he did write the note and this note indicated that, read briefly, 'why are you doing this to me. You know your driving me crazy. What you've done to me, doll, they are putting me in jail. I still love you * * * ' it went on, explaining that she wished that Arlene Smith wouldn't bring these charges against her and that she still loved her."

This seems to be a classic illustration of double hearsay. The note itself is hearsay, but it would seem to be admissible as an admission. However, the trooper's testimony is hearsay on hearsay and does not fit within any exception to the hearsay rule. The trooper also testified that Mrs. Brown said that the whole dispute arose because Mrs. Brown wished to date a man. He also stated that he spoke to Mrs. Smith on the phone and she said that she wanted Mrs. Brown released and that she loved her.

The trooper's testimony also included the physical aspects of the home, which was a house trailer with some sort of an extension built on it; a total of nine people lived in this home, in which three rooms were used as bedrooms.

In apparently unsworn testimony, the prosecutor indicated that he had received telephone calls

from a person who identified herself as Mrs. Smith. The caller stated that she wanted Mrs. Brown released and that she loved her. The prosecutor further stated that he accused Mrs. Smith of living in a state of lesbianism and she answered that it was "nobody's business but our own". She further told him that she had visited a psychiatrist in Flint who had stated that there was nothing wrong in what she was doing and that it was their own business.

There was sufficient evidence to support the conclusion that the women were engaged in a lesbian relationship. However, there is very little to support the conclusion that this relationship rendered the home an unfit place for the children to reside.

In light of the fact that Mrs. Brown was not afforded counsel at the May 13, 1970 hearing, and that there was little, if any, material and admissible evidence to support the finding that the appellants' homosexual relationship rendered their home unfit for their children, the case is remanded to the probate court for a full hearing relative both to its jurisdiction and the disposition of the children, if jurisdiction is found. Pending the probate court's decision on remand, the children are to remain in their foster homes.

Our disposition renders unnecessary consideration of appellants' contention that the statute is void for vagueness.

Reversed and remanded.

All concurred.