IN THE MATTER OF CURRY

INGHAM COUNTY DEPARTMENT OF SOCIAL SERVICES v
CURRY

Docket No. 54177. Submitted June 11, 1981, at Lansing.—Decided
    March 3, 1982.

The Ingham County Department of Social Services filed a petition
    in Ingham Probate Court alleging that the three minor chil-
    dren of Anthony Curry, Sr., and Essie Curry were within the
    jurisdiction of the juvenile division of the Ingham Probate
    Court because the children were without proper custody or
    guardianship and their home or environment was unfit because
    of the criminality of their parents. Following a trial on the
    issue of the probate court's jurisdiction over the children, the
    jury determined that the probate court had jurisdiction over
    the children on both counts. The probate court, Donald S.
    Owens, J., ordered that the children be made temporary wards
    of the juvenile court and placed the children in the custody of
    an aunt and uncle. The Ingham Circuit Court, Robert H. Bell,
    J., affirmed the probate court's order. The Currys appeal by
    leave granted. *Held:*

    The probate court may not assume jurisdiction over minor
    children placed by their parents in the custody of relatives
    where there has been no showing that the children's living
    environment is unfit or unwholesome. No such showing was
    made in this case, and the criminal status of the parents is not
    a sufficient basis by itself for the probate court's assumption of
    jurisdiction. The probate court should have granted the Currys'
    motion for a directed verdict on the grounds that there was no
    showing that the home provided by the grandparents was unfit
    or that the criminality of the parents otherwise affected the

REFERENCES FOR POINTS IN HEADNOTES
[1] 59 Am Jur 2d, Parent and Child § 34.
[2] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers § 182.
[3] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers § 185.
[4] 20 Am Jur 2d, Courts §§ 32, 104.
    59 Am Jur 2d, Parent and Child §§ 39, 40.
[5] 59 Am Jur 2d, Parent and Child § 9.

lives of the children. The jury must have based its decision on the criminal status of the parents rather than the effect of the parents' criminality on the children.

Reversed.

1. INFANTS — TEMPORARY CUSTODY — RELATIVES.

A parent may entrust the care of a child for extended periods of time to relatives or others without interference by the state as long as the child is adequately cared for.

2. INFANTS — TEMPORARY CUSTODY — RELATIVES — MEDICAL CARE.

Parents may execute and sign an authorization allowing a relative in whose care their child has been entrusted to consent to any medical treatment the child may require.

3. INFANTS — EMERGENCY MEDICAL TREATMENT — PARENTAL CONSENT.

A child will receive whatever emergency medical treatment is necessary even though parental consent is unattainable.

4. INFANTS — TEMPORARY CUSTODY — CRIMINAL STATUS OF PARENTS — JURISDICTION OF PROBATE COURT.

A probate court erred by not granting a directed verdict in favor of the parents in an action to bring the parents' children under the jurisdiction of the probate court on the grounds that the children were without proper custody or guardianship and that their home or environment was unfit because of the criminality of their parents where there was no evidence presented to show that the home in which the children were living was unfit because of the criminality of the parents; criminal status of the parents, without more, is not a sufficient basis for the probate court's assumption of jurisdiction.

5. INFANTS — CHILD CUSTODY — STATE.

The state should not inject itself into child custody matters involving the lives of its citizens except where specifically authorized by law and when necessary to prevent abuse and neglect.

*Peter D. Houk,* Prosecuting Attorney, and *Janis L. Blough,* Chief Appellate Attorney, for Ingham County Department of Social Services.

*Ball & Van Dan,* for Anthony Curry, Sr., and Essie Curry.

Before: Danhof, C.J., and M. F. Cavanagh and D. R. Freeman,* JJ.

M. F. Cavanagh, J. Petitioner filed a petition in the Ingham County Probate Court alleging that respondents' three children were within the jurisdiction of the juvenile division of the Ingham County Probate Court, pursuant to MCL 712A.2(b)(1), 712A.2(b)(2); MSA 27.3178(598.2)(b)(1), 27.3178(598.2)(b)(2). The claim of jurisdiction was based on allegations that the children were "without proper custody or guardianship" and that their home or environment was unfit because of the criminality of their parents. A jury trial was held to determine the issue of the probate court's jurisdiction over the children. The jury determined that the probate court had jurisdiction over the children on both counts. The probate court ordered that the children be made temporary wards of the juvenile court and placed the children in the custody of their aunt and uncle. Respondents appealed the order of the probate court to circuit court where the probate court's order was affirmed. Respondents appeal here by leave of this Court.

The father of these children was convicted of being an habitual criminal in November, 1977, and was sentenced to life imprisonment. At the time of the probate court trial, the children's mother was incarcerated in the Ingham County jail on a charge of delivery of cocaine, allegedly committed while she was out on "inmate status" from a previous larceny from a building conviction. She was subsequently convicted on the delivery charge.

The first issue presented to this Court by the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

appellant-parents is whether the probate court, under the "without proper custody or guardianship" language of MCL 712A.2(b)(1); MSA 27.3178(598.2)(b)(1), may assume jurisdiction over minor children when the parents have placed the children in the custody of relatives and there has been no showing that the children's living environment is unfit or unwholesome.

The respondents' children, prior to the time of the probate court hearing, had been entrusted to the care of their maternal and paternal grandmothers, spending time with one until she needed a "rest" and then staying with the other. There was no evidence allowed to be presented at the trial which would prove or disprove the fitness of the home conditions with the grandmothers because the trial court found such evidence to be irrelevant and immaterial to the allegations of improper custody.

MCL 712A.2; MSA 27.3178(598.2) provides in relevant part:

"Except as provided herein, the juvenile division of the probate court shall have:

"(b) Jurisdiction in proceedings concerning any child under 17 years of age found within the county

"(1) Whose parent or other person legally responsible for the care and maintenance of such child, when able to do so, neglects or refuses to provide proper or necessary support, education as required by law, medical, surgical or other care necessary for his health, morals, or who is deprived of emotional well-being, or who is abandoned by his parents, guardian or other custodian, or who is otherwise without proper custody or guardianship * * *."

Judge CAMPBELL in *In the Matter of Carlene Ward,* 104 Mich App 354; 304 NW2d 844 (1981), where the Court was called upon to determine

whether a child is "without proper custody or guardianship" when placed by a parent in a relative's home, quoted from *In re Marias Weldon,* 397 Mich 225, 296; 244 NW2d 827 (1976), where Justice LEVIN said:

"Most parents raise their children themselves. Some parents, however, because of illness, incarceration, employment or other reason, entrust the care of their children for extended periods of time to others. This they may do without interference by the state so long as the child is adequately cared for. 'Clearly it is *not* the law that before a child can be placed by a parent in temporary custody of a relative permission must be first obtained from the court.' *Diernfeld v People,* 137 Colo 238, 242-243; 323 P2d 628 (1958) (emphasis by the Court)." (Footnote omitted.)

The *Ward* Court went on:

"*In re Gould,* 171 Mich 540, 545-546; 137 NW 223 (1912), involved a claim under 1909 PA 310, a predecessor of the current statute, which gave probate court jurisdiction over a 'dependent or neglected child'."

According to the Court, the statute contained the following definition:

"For the purpose of this act the words 'dependent child' and 'neglected child' shall mean any child who for any reason is destitute or homeless or abandoned or dependent upon the public for support, or who has not proper parental care or guardianship or who habitually begs.

"The Court, in considering the application of the provisions of the act, held:

" 'It is undisputed that he has an excellent home with his grandparents, who have heretofore cared for, and are anxious to care for him in the future. All this has been done with at least the tacit consent of the father,

who has never been asked to pay for such care and support. Is not such care "proper parental care or guardianship?" We think so.' " *Ward, supra,* 359-360.

Petitioner argues that the respondents' children must be made temporary wards of the court so that the children can receive emergency medical care and enroll in school. We reject this argument. Although school districts have policies discouraging students from living with persons other than their parents or legal guardians, these policies are aimed at preventing children from living away from their parents and enrolling in school districts strictly for educational reasons. When a child's parents live outside a school district or are unable to care for the child and the parents have chosen to place the child with relatives within a district, school districts may examine each case individually and accept the parents' signatures on forms attesting to the fact that the child's residence in that district with persons other than his or her parents is not solely for the purpose of enrolling the child in school in that district.

Likewise, parents may execute and sign an authorization allowing the relative in whose care a child has been entrusted to consent to any medical treatment the child may require. As to emergency medical treatment, the child would receive whatever treatment is necessary even though parental consent was unattainable. See *Luka v Lowrie,* 171 Mich 122; 136 NW 1106 (1912). The reason why consent could not be obtained, such as a parent's incarceration, does not alter this.

We choose to follow the decision of this Court in *Ward.* Until there is a demonstration that the person entrusted with the care of the child by that child's parent is either unwilling or incapable of providing for the health, maintenance, and well

being of the child, the state should be unwilling to interfere.

We turn now to the petitioner's alternate assertion that the "criminality" of the parents gave rise to jurisdiction in the probate court. In this regard, the petition filed by petitioner in this case alleged as grounds for jurisdiction the following:

"(2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality or depravity on the part of a parent, guardian or other custodian, is an unfit place for such child to live in, or whose mother is unmarried and without adequate provision for care and support." MCL 712A.2(b)(2); MSA 27.3178(598.2)(b)(2).

The trial court instructed the jury as follows:

"As to count two of the petition. If you find by a preponderance of the evidence that the home or environment of Felicia, Anthony and Tawoyn Curry *was an unfit place for them to live in because of criminality* on the part of either their mother, Essie Curry, or their father, Anthony Curry, or both, then you must find that the court has jurisdiction * * *." (Emphasis added.)

The foregoing instruction appears to conform to the language of the statute. However, respondents argue that no evidence was produced showing that the home of the children was unfit because of their criminal acts. The trial court disallowed testimony concerning the quality of care provided by the grandparents. At the close of petitioner's proofs, defense counsel brought a motion for directed verdict on the grounds that there was no showing that the home provided by the grandparents was unfit or that the criminality of the parents otherwise affected the lives of the children. In denying respondents' motion, the trial court stated:

"It is the court's opinion that it [criminality] does not have to have had affected the minor children, yet. The law is clear that anticipated effect is sufficient.

\*　\*　\*

"So because of that and viewing the evidence in that light most favorable to the petitioner I think a juror could conclude that there is unfitness here due to criminality and so I would deny the motion on that ground."

The trial court, as does petitioner on appeal, relied upon this Court's decision in *In re Dittrick Infant (Bay County Dep't of Social Services v Dittrick),* 80 Mich App 219, 222; 263 NW2d 37 (1977), holding that evidence that a parent had abused one child could be used to show future anticipated neglect or abuse of another child of the same parent. We find that case clearly distinguishable from the facts here as no evidence of abuse, neglect or other improper care was shown nor was the opposite allowed to be demonstrated.

A case more analogous is that of *People v Brown,* 49 Mich App 358, 365; 212 NW2d 55 (1973), which involved a petition brought under the same section of the act embracing "criminality" and alleging that the home in which the minor children were living was unfit because the mothers were living in a lesbian relationship. This Court stated:

"There was sufficient evidence to support the conclusion that the women were engaged in a lesbian relationship. However, there is very little to support the conclusion that this relationship rendered the home an unfit place for the children to reside."

The case was remanded for a full hearing to determine whether the home was unfit. We are persuaded that since there was no evidence pre-

sented below that the home in which the children were living was unfit because of the criminality of the parents, the trial court should have granted respondents' motion for a directed verdict, as the jury must have based its decision on the criminal status of the parents rather than the effect of the parents' criminality on the children.

In addition to what we deem to be the plain meaning of the statute, there is the decision in *In the Matter of Delbert Kidder, Jr (On Remand),* 61 Mich App 451; 233 NW2d 495 (1975), *remanded* 395 Mich 51 (1975), which further persuades us that the trial court erred in finding jurisdiction based on "criminality". In *Kidder,* this Court said at page 453:

"The circuit court, in affirming the probate court's termination order, concluded that while defendant's incarceration was, by itself, insufficient to warrant termination of defendant's parental rights, his incarceration plus his intended reconciliation with his wife was sufficient. We agree."

The Supreme Court by peremptory order remanded the *Kidder* case to the Barry County Probate Court for the prompt filing by appellant of a petition for restoration of parental rights, such petition to be considered and decided promptly by the probate court. Further, the order stated: "In making this order the Court explicitly does not approve of the reasoning of the courts below concerning this case."[1]

---

[1] We conclude from this that the Supreme Court peremptorily rejected the termination of parental rights based on the father's incarceration plus his intended reconciliation with his wife who had allowed their 4-1/2 month old son to sustain numerous fractures. There was no positive evidence presented of mistreatment by the mother but there was testimony that she had a male friend who lived with her and the child and who disciplined the child often and that he had a violent temper.

In sum, we are persuaded that the criminal status alone of these respondents is not a sufficient basis for the probate court's assumption of jurisdiction. Some showing of unfitness of the custodial environment was necessary and no such showing was made in the instant case. The state should not inject itself into the lives of its citizens except when specifically authorized by law and when necessary to prevent abuse and neglect. *In re Ward, supra,* stood for the proposition that parents are free, without state interference, to place their children in a custodial environment of their choosing as long as it is fit. We believe *Kidder, supra,* and this case stand for the proposition that parents, convicted of crimes, have the same right.

The order of the probate court is reversed. No costs.