*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

*In re* B. M. BAHAM, Minor.

FOR PUBLICATION
April 2, 2020
9:10 a.m.

No. 349595
Van Buren Circuit Court
Family Division
LC No. 17-018872-NA

Before: MARKEY, P.J., and GLEICHER and M. J. KELLY, JJ.

M. J. KELLY, J.

Respondent appeals as of right the trial court order terminating her parental rights to her minor child, BB, presumably[1] under MCL 712A.19b(3)(h) and MCL 712A.19b(3)(j). On appeal, respondent challenges the trial court's decision to take jurisdiction over BB and its decision to terminate her parental rights. We affirm the trial court's order taking jurisdiction over the child because respondent cannot establish plain error affecting her substantial rights with regard to that decision. We vacate the trial court's termination order, however, because after review of the whole record we are left with a definite and firm conviction that the trial court made a mistake by finding clear and convincing evidence of statutory grounds to terminate respondent's parental rights to BB.

## I.  BASIC FACTS

---

[1] Although the trial court order states that it found statutory grounds to terminate respondent's parental rights, the trial court wholly failed to specifically identify the statutory grounds it found had been established. Petitioner, the Department of Health and Humans Services (DHHS), however, sought termination under MCL 7.12A.19b(3)(h) and (3)(j), and the trial court's findings—despite being myopically focused on best interests—arguably indicate that it found both statutory grounds satisfied. The trial court's findings will be discussed in detail later in this opinion.

In October 2017, respondent and two men entered respondent's father's home. Using a baseball bat, the two men robbed and attacked respondent's father. Respondent and the men left, leaving respondent's father badly beaten. Although respondent did not know it at the time of the armed robbery, her young son was in the home, and as a result of the robbery was left without proper care and custody.[2] On January 3, 2018, respondent was arrested for the armed robbery of her father. She pleaded guilty, and in May 2018, she was sentenced to 5 to 20 years in prison. Her earliest release date is January 8, 2023.

Respondent did not discover that she was pregnant with BB until after she was incarcerated. Respondent testified that she knew Child Protective Services (CPS) would be involved, and she recounted that before she gave birth she spoke with a pregnancy counselor, who "set up a plan." At the termination hearing, respondent testified that she had three plans for when the child was born: to place the child with either her mother, her bother and sister-in-law, or with a close family friend until respondent was released from prison. Respondent believed that the pregnancy counselor was trying to work it out, and she believed that the child would be provided with care via a legal guardianship. The child was born in September 2018.

Within days of BB's birth, the Department of Health and Human Services (DHHS) filed a petition seeking temporary custody over BB, alleging that respondent was incarcerated, was unable to physically provide care for BB, and had "not provided an appropriate plan for [BB's] care and supervision." At the time that the petition was filed, BB was at the hospital and no plan for her care had been successfully implemented. At the initial preliminary hearing, a CPS worker informed the court that respondent "would like" BB "to reside with [respondent's] biological brother." And respondent stated that she would not need a lawyer "if we got everything figured out." On further questioning from the court, respondent explained that the plan was for BB to reside with respondent's brother. Thereafter, the child was placed with respondent's brother. No guardianship was put in place, however. On October 9, 2018, respondent entered a plea of admission to the allegations in the petition, and the trial court found that, based on respondent's admission, there was a statutory basis under MCL 712A.2(b)(1) to assume jurisdiction of BB.

Respondent was provided with a Parent Agency Treatment Plan (PATP), which required her to address issues with substance abuse, deficient parenting skills, and emotional stability.[3] At the termination hearing, respondent's caseworker testified that respondent was compliant with her

---

[2] Respondent's son was removed from her care approximately one week later. Her parental rights to her son were subsequently terminated and are not at issue in this appeal.

[3] We note that the case services plan, even at the outset, demonstrated that the DHHS did not genuinely intend to allow for the possibility of reunification. The initial case services plan, stated that "[d]ue to [respondent's being incarcerated for an extended period, it would be in the child's best interest to change her permanency planning goal to adoption." In another section, the report candidly states that "[d]ue to the length of time [respondent] will be incarcerated, it is in [BB's] best interest to change the goal to adoption . . . ." The case services plan was signed October 2018, which is before respondent even had an opportunity to attempt to participate in reunification services.

case planning, noting that respondent "actually did a really good job all things considered." Furthermore, respondent testified that she had completed a parenting class, and she explained that she was able to incorporate some of the techniques she learned into her weekly parenting time sessions with BB. Respondent also testified that she was taking GED classes and that she anticipated earning her GED within one month. She was on a wait list for cosmetology training, which she hoped would permit her to obtain employment shortly after her release from prison. In addition, respondent testified that she was on the wait list for additional services, including an additional parenting class, a reading program that would allow her to read a book and send a recording of her reading the book to her child, and NA classes. Respondent was also participating in a "Moving On" class, which she explained had taught her how to distinguish good relationships from bad relationships. Respondent's Moving On instructor indicated to her that after completing the class, if she did well, there would be a possibility of her receiving an earlier release from prison.[4] The caseworker explained that she received documentation showing all the services that respondent had participated in, the services she was on a wait list for, and the dates of services completed. She also agreed that respondent's testimony regarding her services while incarcerated was "accurate." The caseworker also testified that the prison staff reported that respondent was compliant and had not "gotten into any trouble" or received any tickets since being incarcerated.

Despite respondent's undisputed compliance with the case services plan, on March 27, 2019, the DHHS filed a petition to terminate respondent's parental rights. The petition alleged that termination was proper under MCL 712A.19b(3)(h) and MCL 712A.19b(3)(j). Following a termination hearing, the trial court made a number of factual findings allowing for an inference that it found statutory grounds to terminate respondent's parental rights under MCL 712A.19b(3)(h) and MCL 712A.19b(3)(j), and it found that termination of respondent's parental rights was in BB's best interests.

This appeal follows.

## II. JURISDICTION

### A. STANDARD OF REVIEW

Respondent argues that the trial court erred by finding grounds to exercise jurisdiction under MCL 712A.2(b)(1). Respondent did not challenge the court's jurisdictional decision until after the court entered an order terminating her parental rights. Accordingly, we review her challenge for plain-error affecting her substantial rights. *In re Ferranti*, 504 Mich 1, 29; 934 NW2d 610 (2019). In order to prevail, respondent "must establish that (1) error occurred; (2) the error was 'plain,' i.e. clear or obvious; and (3) the plain error affected [her] substantial rights." *Id*. "A 'clear or obvious' error under the second prong is one that is not 'subject to reasonable dispute.' " *In re Pederson minors*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 349881); slip op at 9. "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). Moreover, reversal is unwarranted unless the error "seriously affected the fairness, integrity or public

---

[4] Although the DHHS attempted to introduce evidence that respondent would not, in fact, be eligible for an early release, the trial court declined to take judicial notice of the evidence.

-3-

reputation of judicial proceedings." *Ferranti*, 504 Mich at 29 (quotation marks, citation, and alterations omitted).

## B. ANALYSIS

Respondent argues that the trial court erred by assuming jurisdiction over BB because the facts she admitted to are insufficient to support a finding of statutory grounds under MCL 712A.2(b)(1). She has not, however, established that an error occurred, that it was plain, and that it affected her substantial rights. Nor has she offered any analysis as to how the alleged plain error seriously affected the fairness, integrity, or public reputation of the child protective proceedings.

After authorizing a petition to take jurisdiction over a minor child, the trial court "can exercise jurisdiction [over the child] if a respondent-parent enters a plea of admission or no contest to the allegations in the petition . . . ." *Ferranti*, 504 Mich at 15; MCR 3.971.[5] However, before it may do so, the court must find that a statutory basis exists for exercising jurisdiction over a minor in a child protective proceeding. *In re PAP*, 247 Mich App 148, 152–153; 640 NW2d 880 (2001). Thus, even if a respondent enters a plea of admission to all or some of the allegations in the petition, the trial court may not accept that plea "without establishing support for a finding that one or more of the statutory grounds alleged in the petition are true . . . ." MCR 3.971(D)(2). If the trial court does not establish support for a finding that one or more of the statutory grounds alleged in the petition is true, then the respondent's plea of admission is an invalid plea because it is not an accurate plea. MCR 3.971(D)(2).

The court in this case exercised jurisdiction over BB under MCL 712A.2(b)(1), which provides:

> (b) Jurisdiction in proceedings concerning a juvenile under 18 years of age found within the county:
>
> (1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or *who is without proper custody or guardianship*. [Emphasis added.]

Under this statutory provision, there are a number of alternative grounds for taking jurisdiction. Relevant to this appeal, the trial court specifically stated in its written order of adjudication that it was exercising jurisdiction over BB because there was "a lack of proper custody or guardianship."[6] The phrase "without proper custody or guardianship" is defined by the statute, which provides that " '[w]ithout proper custody or guardianship' does not mean a parent has placed the juvenile with

---

[5] The court may also exercise jurisdiction over the child if the DHHS proves the allegations alleged in the petition at a trial. *Ferranti*, 504 Mich at 15.

[6] "[A] court speaks through its written orders and judgments, not through its oral pronouncements." *In re Contempt of Henry*, 282 Mich App 656, 678; 765 NW2d 44 (2009).

another person who is *legally responsible* for the care and maintenance of the juvenile and who is able to and does provide the juvenile with proper care and maintenance." MCL 712A.2(b)(1)(C) (emphasis added).

At the adjudication hearing, respondent's lawyer indicated that respondent desired to enter a plea of admission to the allegation of improper supervision contained in paragraph B of the petition. After advising respondent of the rights she was giving up by entering a plea and the consequences of entering a plea, respondent testified. She admitted that she was BB's mother, that she was incarcerated for armed robbery, and that her earliest release date is January 8, 2023. The following exchange then occurred:

> *Q.* And because you-re in the—because you're there at least through 2023, are you able to care for [BB]?
>
> *A.* No, I can't.
>
> *Q.* You can't provide physical care for [BB] at this time?
>
> *A.* No.
>
> *Q.* And you wouldn't be able to provide any financial care at this time, minimal?
>
> *A.* No.
>
> *Q.* All right. And basically the last thing says that you don't really have a—*you do have a plan but you don't really have an appropriate plan for [BB] at this point in time?* You have some ideas of what you'd like to do with her?
>
> *A.* Yeah.
>
> *Q.* But you can't really do 'em cause you're in there, correct?
>
> *A.* Yeah.
>
> *Q.* Okay. And you can't again and I've already asked this kind of but you can't provide any supervision, you can't watch her or do anything with her at this time?
>
> *A.* No. [Emphasis added.]

Viewing the above, it is clear that respondent admitted that she was incarcerated. Although respondent also stated that she had an "idea" on what she wanted to happen and that she had a "plan," she nevertheless testified—under oath—that she did not have an *appropriate* plan for BB's care. Based on respondent's testimony, therefore, the court could find—and did find—that BB was left without proper custody and guardianship. Because respondent's testimony was sufficient to establish support for a finding that jurisdiction was proper under MCL 712A.2(b), we discern no plain error in the court's decision.

Despite her testimony that she did not have an appropriate plan for BB's care, respondent contends on appeal that jurisdiction was not proper because BB was placed into the care of respondent's brother and his home was not unfit. Caselaw supports that if *a parent* places a child in the care of a relative whose home is not unfit, then the without "proper custody or guardianship" language is not satisfied. For example, in *In the Matter of Curry*, 113 Mich App 821, 824, 826,; 318 NW2d 567 (1982), this Court held that the trial court erred by finding the respondents' children had been left "without proper custody or guardianship" because the respondents had placed their children in the custody of relatives before the probate court hearing and there was no evidence showing that the children's living environment was unfit or unwholesome. The Court explained that "[u]ntil there is a demonstration that the person entrusted with the care of the child by that child's parent is either unwilling or incapable of providing for the health, maintenance and well being of the child, the state should be unwilling to interfere." *Id.* at 826-827. Similarly, *In re Ward*, 104 Mich App 354, 356; 304 NW2d 844 (1981), this Court held that a child "who was placed by her natural mother in the custody of a relative who properly cared for her, is not a minor 'otherwise without proper custody or guardianship" under MCL 712A.2(b)(1).

In this case, unlike the respondent-parents in *Ward* and *Curry*, there is no evidence that respondent placed her child with any relative before the petition was filed. See *In re MU*, 264 Mich App 270, 279; 690 NW2d 495 (2004) (holding that because MCL 712A.2 "speaks in the present tense . . . the trial court must examine the child's situation at the time the petition was filed."). Instead, at the time the petition was filed, BB was in the hospital. And, although respondent had been discussing arrangements for BB's care with a pregnancy counselor, respondent did not implement any of the potential plans prior to the filing of the petition. Again, as noted above, respondent testified at the termination hearing that she had "three plans for when the baby was born." And she stated that she "thought" the care was supposed to be through a guardianship, which is what the pregnancy counselor was "trying to work out." However, she agreed that "something happened and the guardianship wasn't done." No guardianship was ever done, either before or after the adjudication hearing was held. As a result, notwithstanding the child's placement with respondent's brother at the time she entered her plea of admission, respondent cannot show plain error.

Finally, even if respondent could show plain error, she had made no attempt to establish that the plain error affected her substantial rights. Respondent made a decision to enter a plea of admission to the allegations in the petition. As a result, the adversarial process was never engaged. We can glean from the record that respondent discussed multiple options for giving a guardianship over BB to a relative or a close family friend. We cannot, however, discern whether any relative or family friend was willing—prior to the involvement of the DHHS—to actually serve as the child's guardian. We could discern that respondent's brother was willing to take care of the child. The record shows that he and his wife—after the DHHS became involved—accepted placement of the child. But the record also reflects that he thought adopting BB was the best option. There is nothing indicating that he would have accepted a legal guardianship as an alternative. Nor is there any indication that, again absent the involvement of the DHHS, that he would have been willing and capable of providing for BB's care and custody for the duration of respondent's incarceration. Ultimately, because respondent entered a plea of admission, these factual matters remain ambiguous, open to speculation either in support of or in opposition to respondent's argument on appeal. Speculation and suspicion that a plain error may have occurred is insufficient to establish a reasonable probability that the outcome of the proceedings would have been

different. For the same reasons, we conclude that even if there were an error, it did not seriously affect the integrity, fairness, or public reputation of the child protective proceedings.

The trial court did not err by finding statutory grounds to exercise jurisdiction under MCL 712A.2(b).

## III. TERMINATION OF PARENTAL RIGHTS

### A. STANDARD OF REVIEW

Respondent next argues that the trial court erred by finding statutory grounds to terminate her parental rights. Challenges to a court's finding that a statutory ground for termination has been established are reviewed for clear error. *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011); see also MCR 3.977(K). "Clear error exists when some evidence supports a finding, but a review of the entire record leaves the reviewing court with the definite and firm conviction that the lower court made a mistake." *In re Dearmon*, 303 Mich App 684, 700; 847 NW2d 514 (2014). We defer to the trial court's special opportunity to view the witnesses before it. *Id*.

As recently explained by this Court in *Pederson Minors*, ___ Mich App at ___; slip op at 14:

> "To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Ellis*, 294 Mich App at 32. The clear and convincing evidence standard is "the most demanding standard applied in civil cases[.]" *In re Martin*, 450 Mich 204, 227; 538 NW2d 399 (1995). Evidence is clear and convincing if
>
> > it produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the factfinder to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. [*Id*. (quotation marks, citation, and brackets omitted.]
>
> "Evidence may be uncontroverted, and yet not be 'clear and convincing.' " *Id*. (quotation marks and citation omitted). "Conversely, evidence may be 'clear and convincing' despite the fact that it has been contradicted." *Id*. (quotation marks and citation omitted).

### B. ANALYSIS

We first address whether reversal is required because the trial court failed to specifically identify the statutory grounds upon which it was terminating respondent's parental rights. MCR 3.977(I)(3) provides that "[a]n order terminating parental rights under the Juvenile Code may not be entered unless the court makes findings of fact, states its conclusions of law, and includes the statutory basis for the order." The court must "state on the record or in writing its findings of fact and conclusions of law[,] [and] [b]rief, definite, and pertinent findings and conclusions on

contested matters are sufficient." MCR 3.977(I)(1). In its lengthy opinion, the trial court did not specifically identify either statutory ground as a basis for its termination decision, nor did it directly quote the language of either statutory provision. In fact, the language used in its opinion showed that, as it related to respondent,[7] the court was focused exclusively on the best interests of the child.[8] Nevertheless, it its written order, the court did proclaim that it found statutory grounds to terminate respondent's parental rights. And, although an articulation of the statutory grounds and the facts the court found to support them would have greatly aided this Court's review, the findings the court did make are adequate for appellate review.

The DHHS sought termination under MCL 712A.19b(3)(h) and (j), presented evidence in support of those statutory grounds, and argued during closing that the grounds had been established by the evidence presented. Termination is proper under MCL 712A.19b(3)(h) if the court finds by clear and convincing evidence:

> (h) The parent is imprisoned for such a period that the child will be deprived of a normal home for a period exceeding 2 years, and the parent has not provided for the child's proper care and custody, and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

As explained by our Supreme Court in *In re Mason*, 486 Mich 142, 164-165; 782 NW2d 747 (2010), "MCL 712A.19b(3)(h) authorizes termination only if *each* of the three conditions" set forth in the statute are met. We examine each condition in turn.

First, the court must find by clear and convincing evidence that the respondent "is imprisoned for such a period that the child will be deprived of a normal home for a period exceeding 2 years . . . ." MCL 712A.19(b)(3)(h); *Mason*, 486 Mich at 160. The second condition requires the trial court to find that "the parent has not provided for the child's proper care and

---

[7] In contrast, when determining whether to terminate the parental rights of BB's unidentified father, the court specifically found that termination was proper under MCL 712A.19b(3)(a) because the father had deserted BB for a period of 28 or more days and had not sought custody during that period. Then, only after finding statutory grounds for termination, the court turned to whether termination of the father's parental rights was in BB's best interests.

[8] The trial court, for example, discussed the existence of a bond between BB and respondent, but determined the child's bond with the foster parents (who had more contact with BB) was stronger. The court then stated that "[t]he child has a great need for permanency, stability and finality," noting her young age and her possibility of developmental delays. The court considered, at length, the "advantages of the foster home over the parent's home," as well as the existence of a bond between BB and her cousins. The court expressly stated that "[t]he child is doing extremely well in current care," and noted that the "possibilities of adoption in the current placement is great." Then, finally, the court looked at "the issue of relative placement," but determined that it did not outweigh the need to terminate. Ultimately, at the conclusion of all of its findings of fact, the court stated that it was in BB's best interests to terminate respondent's parental rights.

custody." MCL 712A.19(b)(3)(h); *Mason*, 486 Mich at 160. Here, the court found that respondent's earliest release date was January 8, 2023, which means that respondent's incarceration will necessarily exceed a two-year period. Furthermore, it is clear that, as she is imprisoned, respondent will be unable to provide a normal home for BB for a period exceeding two years. Yet, respondent's inability to personally provide care for her child is not dispositive because a parent does not have to be personally able to provide proper care and custody. Rather, he or she can "achieve proper care and custody through placement [of the child] with a relative." *Mason*, 486 Mich at 161 n 11. In this case, the record reflects that respondent and the DHHS worked together to place BB with respondent's brother. It does not matter that the child was placed with the DHHS before respondent could voluntarily place the child with her brother. See *id*. at 163. Here, BB was, in fact, placed in the care of respondent's brother, who as recounted by the trial court, was providing exceptional care and custody for the child in respondent's absence. Thus, given that the undisputed record shows that respondent was providing proper care and custody to BB by placing her with a relative, we are left with a definite and firm conviction that a mistake was made.[9]

In addition, there is insufficient evidence to support a finding that the third element of MCL 712A.19b(3)(h) is satisfied. The third condition "is forward-looking" and "asks whether a parent 'will be able to' provide proper care and custody within a reasonable time." *Mason*, 486 Mich at 161. In this case, the caseworker opined that it would take respondent 8 to 12 months after being released from prison to be able to provide BB with proper care and custody, noting that respondent would have to maintain stable housing and employment, have child-support set up, participate in substance-abuse classes or NA meetings, and participate in parenting classes. Yet, she added that it was "based on the normal life span of a CPS case." The caseworker's opinion, thus, is "largely unsupported" by evidence specific to *respondent's circumstances*. See *id*. (noting that the trial court erred by relying on a caseworker's largely unsupported opinion regarding how long it would take the respondent to provide care after being released from prison).

---

[9] It should be noted that MCL 712A.19b(3)(h) requires a finding that a parent has not provided for a child's *proper care and custody*, and our Supreme Court has expressly held that a parent can achieve proper care and custody by arranging for a parent to place a child with a relative. *Mason*, 486 Mich at 161. The fact that the placement may occur after the trial court has exercised jurisdiction under MCL 712A.2(b), and that the placement may have only been accomplished with the aid of the DHHS and the court, is irrelevant. The evidentiary standard requires proof by clear and convincing evidence. In contrast, MCL 712A.2(b)(1)(C) provides that a child is without proper care and custody if the parent does not place the child with someone legally responsible for that child's care. Further, it requires the court to examine the circumstances *at the time the petition is filed*. *In re MU*, 264 Mich App at 279. The evidentiary standard only requires proof by a preponderance of the evidence. Thus, although evidence that respondent planned with the DHHS to place her child with her brother and the child was actually placed with respondent's brother after the petition was filed is insufficient to defeat a finding of statutory grounds for jurisdiction under MCL 712A.2(b), that same evidence is sufficient to support a finding that the respondent did, in fact, provide proper for her child's proper care and custody under MCL 712A.19b(3)(h).

Moreover, the caseworker's unsupported opinion was contradicted by the evidence admitted at the termination hearing. First, while in prison, respondent had completed a parenting class and was on a wait list for another one. She was able to incorporate some of the techniques she learned into her parenting time visits. There are no reports that she was inappropriate at parenting time.[10] Therefore, even if she had to take another parenting class upon release from prison, there is nothing to suggest that she might need to take multiple classes or that her parenting skills would be at a pre-prison level such that it would take her up to a year to resolve any parenting problems. Second, respondent was on a wait list for cosmetology school, and intended to seek employment in that field upon release. She was also in the process of obtaining her GED. Thus, although the caseworker opined that employment might be a problem, it was a problem that respondent was actively seeking to remedy prior to her release. Third, despite the caseworker's opinion that respondent may not have any support to assist with her daughter, the record reflects that her parents were very supportive of her. Moreover, given the undisputed bond between respondent's brother's family and BB, it defies logic to assume that he would be unwilling to provide any assistance with BB once respondent was released from prison. Finally, with regard to housing, respondent stated that she intended to reside with her parents until she could earn enough money for her own apartment. There is nothing on the record to suggest that she would be required to live independently before her child could be returned to her.

Finally, the trial court found that respondent was complying with her services and was doing well in prison, which further negates an inference that she somehow would be non-compliant with services if released.[11] Specifically, the trial court found—and the record confirms—that:

> [S]ince [respondent's] been incarcerated since January of 2018, she's done extremely well. And while in prison, it appears she's a model prisoner. She's been doing everything she could, doing all the classes she can doing parenting classes . . . .

> * * *

> It sound like things are going very, very, very well in prison for her and that's a good thing. And what's also telling of the type of family she has is that even she says here today that her goal would be once she's released from prison, that she'd probably return to her father's home. That's where her son is apparently and where this crime occurred that caused her to go to prison. And so her family has apparently forgiven her. She's indicated that her mother, her father, brother or

---

[10] The caseworker testified that, although none of the visits were observed by her, the foster parents reported that BB would cry "a lot" during the visits. However, the foster parents apparently attributed the crying to being at the prison. In addition, given that BB was an infant at the time, it would have been more alarming if she did not cry at all during the visits.

[11] The trial court recited respondent's history of noncompliance with services in an earlier child-protective proceeding. However, given that respondent *had* been compliant for 9 months and was still seeking out services, the inference of non-compliance created by her conduct in the earlier case was weakened.

sister brings [BB] up for parenting time with her and that she's apparently mended whatever damage she's done with her family which is a good thing and it really shows what kind of a strong family they have . . . .

* * *

The parent's compliance with [the] case service plan has been great as far as [respondent] has been concerned. . . . [S]ince this child has come into care which was shortly after birth in September of 2018, she has done everything possible that she could. [Respondent] has done every program that she can get her hands on while she's institutionalized. She's been doing the visits that she could. Her parenting visitation with the child, the history of visitation has been extremely good. Any time she can, she's there, and has been showing she's trying to do what she can to better herself and it at all possible to have the child returned to her care. So she's done very well with compliance with the case service plan as well as visitation.

Considering all of the above, we are left with a definite and firm conviction that the court made a mistake by terminating respondent's parental rights under MCL 712A.19b(3)(h).

In addition, termination was not proper under MCL 712A.19b(3)(j). The court may terminate a parent's parental rights under subdivision (j) if it finds by clear and convincing evidence that "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." Again, the record reflects that—despite her prior history—respondent was compliant with services and was seeking out additional services. She was demonstrating appropriate parenting during the parenting time visits, and was making plans for how to support herself and BB in the future, including by earning a GED and attending vocational school while in prison. Her family was supportive of her, both financially and emotionally, and would visit her at the prison. Respondent's behavior in prison was exemplary, with the prison staff reporting that she had no tickets and was not causing any trouble. In light of respondent's undisputed progress toward reunification, to the extent that the court found a *reasonable* probability of harm to BB if returned to respondent's care, the court's finding was clearly erroneous.

## IV. CONCLUSION

The trial court did not plainly err by exercising jurisdiction over BB under MCL 712A.2(b)(1). Accordingly, we affirm the order of adjudication. However, because the court clearly erred by finding statutory grounds to terminate respondent's parental rights under MCL 712A.19b(3)(h) and (j), we vacate the trial court's termination order.

Affirmed in part, vacated in part, and remanded for further proceedings. We do not retain jurisdiction.

/s/ Michael J. Kelly