*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re T. STRICKLAND-MILLER, Minor.

UNPUBLISHED
February 29, 2024

No. 367658
Kent Circuit Court
Family Division
LC No. 21-050441-NA

Before: M. J. KELLY, P.J., and JANSEN and GARRETT, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court's order exercising jurisdiction over his minor child, TS, under MCL 712A.2(b)(1) (parent fails to provide, when able to do so, support, education, medical, surgical, or other necessary care for health or morals, and there is a substantial risk of harm to the child's mental well-being) and MCL 712A.2(b)(2) (an unfit home or environment because of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent). For the following reasons, we reverse and remand.

Immediately after TS was born in March 2021, the Department of Health and Human Services (DHHS) petitioned the trial court to remove him from the care of his mother, who was previously investigated regarding the death of her first child. At the mother's request, the trial court ordered that TS be placed with the mother's godmother. At the time of TS's removal from the mother's care, the mother named another man as TS's putative father; however, the trial court declared respondent-father TS's legal father in May 2022, following a paternity test. Soon thereafter, respondent-father was incarcerated.

In May 2022, the DHHS filed a supplemental removal petition with the trial court as to respondent-father. The petition noted that TS was already in placement with "fictive kin" and sought jurisdiction over TS with respect to respondent-father under MCL 712A.2(b)(1). After the trial court determined that the statutory ground was met by a preponderance of the evidence, it exercised jurisdiction over TS, and respondent-father appealed to this Court. *In re Strickland-Miller*, unpublished per curiam opinion of the Court of Appeals, issued April 13, 2023 (Docket No. 362593), p 1. This Court reversed the trial court's order exercising jurisdiction because TS was already placed in an appropriate fictive-kin placement and the DHHS failed to investigate the

-1-

names of relatives provided by respondent-father to care for TS while he was incarcerated. *Id*. at 1-4.

In May 2023, the DHHS filed another supplemental removal petition with the trial court as to respondent-father. The petition sought jurisdiction over TS with respect to respondent-father under MCL 712A.2(b)(1) and MCL 712A.2(b)(2). The petition noted that respondent-father was on probation and had an active warrant for his arrest for failure to comply with his probation requirements. The petition also alleged that respondent-father lacked appropriate housing for TS and that respondent-father failed to identify any appropriate or willing relatives or fictive kin to provide care, custody, or support to TS. At the adjudication hearing, respondent-father challenged this allegation, arguing that he provided names of four family members and one fictive kin who were willing and able to provide proper care for TS. A foster-care supervisor testified that the agency's relative-engagement specialist was informed by the four relatives that they were unwilling to care for TS and that the fictive kin was unresponsive to requests to engage in the assessment process. Ultimately, the trial court concluded that the allegations in the petition were proven by a preponderance of the evidence, and it assumed jurisdiction. Respondent-father now appeals.

## I. STATUTORY GROUNDS FOR JURISDICTION

Respondent-father first argues that the trial court erred by determining that the statutory grounds were established by a preponderance of the evidence such that the exercise of jurisdiction was proper. We agree.

"We review the trial court's decision to exercise jurisdiction for clear error in light of the court's findings of fact." *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). "A finding is clearly erroneous if, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made." *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009) (quotation marks and citation omitted).

"Child protective proceedings consist of two distinct phases: the trial, also known as the adjudicative phase, and the dispositional phase." *In re Utrera*, 281 Mich App 1, 15; 761 NW2d 253 (2008). The adjudicative phase, which occurs first, is when the "trial court determines whether it may exercise jurisdiction over the minor child pursuant to MCL 712A.2(b)." *Id*. at 16. "To properly exercise jurisdiction, the trial court must find that a statutory basis for jurisdiction exists." *In re BZ*, 264 Mich App at 295. The relevant statute, MCL 712A.2, "speaks in the present tense, and, therefore, the trial court must examine the child's situation at the time the petition was filed." *In re MU*, 264 Mich App 270, 279; 690 NW2d 495 (2004). "During the adjudicative phase, a trial may be held to determine whether any of the statutory grounds alleged in the petition have been proven." *In re AMAC*, 269 Mich App 533, 536; 711 NW2d 426 (2006). If a trial is held, "the rules of evidence for a civil proceeding apply." *Id*.

"Jurisdiction must be established by a preponderance of the evidence." *In re BZ*, 264 Mich App at 295. A "preponderance of the evidence" means evidence of a proposition that when weighed against the evidence opposed to the proposition "has more convincing force and the greater probability of truth." *People v Cross*, 281 Mich App 737, 740; 760 NW2d 314 (2008). "If the court acquires jurisdiction over the child, the dispositional phase follows, at which the trial

court determines what action, if any, will be taken on behalf of the child." *In re Utrera*, 281 Mich App at 16 (quotation marks and citation omitted). "Unlike the adjudicative phase, the Michigan Rules of Evidence do not generally apply at an initial dispositional hearing." *Id*.

In this case, the supplemental petition sought jurisdiction under MCL 712A.2(b)(1) and MCL 712A.2(b)(2). MCL 712A.2(b)(1) provides that a trial court may exercise jurisdiction over a child

> [w]hose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship.

MCL 712A.2(b)(2) provides that a trial court may exercise jurisdiction over a child "[w]hose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in." During the adjudication hearing, the trial court found that these statutory grounds were established by a preponderance of the evidence. We disagree.

At the outset, we note that the DHHS concedes that the trial court clearly erred by exercising jurisdiction over TS under MCL 712A.2(b)(2). The supplemental petition asserted that it was proper for the trial court to assume jurisdiction over TS on the basis that TS's "home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, [was] an unfit place" for TS to live. In a factually similar case, *In re Long*, 326 Mich App 455, 458; 927 NW2d 724 (2018), child-protective proceedings were initiated against the mother and a then-unknown father. The respondent-father later established paternity but was incarcerated. *Id*. The trial court exercised jurisdiction over the respondent-father, in part, under MCL 712A.2(b)(2) on the basis of an unfit home. *Id*. at 462. This exercise of jurisdiction, however, was not accompanied by any allegation that the home the child was living in at the time was unfit. *Id*. This Court held that, because the child's home was not "an unfit place for the juvenile to live in," the trial court clearly erred when it exercised jurisdiction under MCL 712A.2(b)(2). *Id*. (quotation marks omitted).

Likewise, the instant case presents a factual scenario in which child-protective proceedings were first initiated against TS's mother and a then-unknown father. After TS was removed from his mother's care and placed with fictive kin, respondent-father was declared TS's legal father. Although the supplemental petition alleged, and testimony at the adjudication hearing established, that respondent-father had a lengthy criminal history, there were no allegations made that the home TS resided in was unfit. Rather, the record reflects that TS was doing well in his fictive-kin placement. Therefore, the trial court's decision to assume jurisdiction on this basis was clearly erroneous, as the DHHS conceded.

In this case, the supplemental petition alleged that respondent-father did not have appropriate housing for TS and did not provide care, custody, or support to TS. It is well settled in Michigan that a parent can provide "proper care and custody" for a child through placement

-3-

with an appropriate and willing relative. *In re Mason*, 486 Mich 142, 161 n 11; 782 NW2d 747 (2010). Additionally, MCL 712A.2(b)(1)(C) provides that " '[w]ithout proper custody or guardianship' does not mean a parent has placed the juvenile with another person who is legally responsible for the care and maintenance of the juvenile and who is able to and does provide the juvenile with proper care and maintenance."

Testimony from the foster-care supervisor at the adjudication hearing established that TS remained in his fictive-kin placement and was doing well there. There was no allegation, or evidence presented at the adjudication hearing to show, that the fictive kin's care and custody of TS was improper or unfit. Indeed, even the trial court noted that TS appeared to be "thriving" in his fictive-kin placement. Further evidence presented at the adjudication hearing established that, even though respondent-father was unable to provide care for TS while incarcerated, he provided names of four relatives and one fictive kin whom he believed were willing and able to provide such care. At the hearing, the foster-care supervisor testified that all four of the relatives whom respondent-father provided were unwilling to provide care for TS and refused to engaged in the assessment process. As to respondent-father's suggested fictive-kin placement, the foster-care supervisor testified that the agency attempted extensively to get him to participate in the assessment process, but he was not responsive. Respondent-father did not present any evidence to refute this testimony. Therefore, it was reasonable for the trial court to find that the DHHS proved this allegation in the supplemental petition by a preponderance of the evidence.

However, it is unclear why respondent-father was required to offer potential relative and fictive-kin placements when TS was already placed with appropriate fictive kin. Respondent-father did attempt to have TS moved from his current fictive-kin placement to respondent-father's fictive-kin placement; however, that does not appear to have any bearing on the trial court's exercise of jurisdiction over TS. Accordingly, because no evidence was presented that TS's fictive-kin placement was improper or could no longer provide care to TS, we conclude that the trial court's decision to exercise jurisdiction on this basis was clearly erroneous.

Although the supplemental petition did not include any allegations about TS's mental well-being, the trial court's order of adjudication reflects its decision to assume jurisdiction on the basis that TS was subject to a "substantial risk of harm to [his] mental well-being." On appeal, the DHHS argues that evidence presented during the adjudication hearing indicated that respondent-father posed a risk of harm to TS's mental well-being through his criminal acts that had the ability to affect his parenting capabilities. The DHHS cites *In re Ramsey*, 229 Mich App 310, 316; 581 NW2d 291 (1998), to support this proposition, stating that, in that case, this Court held that, although a respondent-parent's criminal acts alone are insufficient for a trial court to assume jurisdiction, if those criminal acts are related to the respondent-parent's ability to care for their child, a finding of jurisdiction is proper. Notably, in *In re Ramsey*, this Court stated:

> An earlier panel of this Court held that the respondent parents' criminal status alone was not a sufficient basis for the probate court's assumption of jurisdiction. *In re Curry*, 113 Mich App 821, 830; 318 NW2d 567 (1982). However, *Curry* is distinguishable from the present case on a significant point. In *Curry*, the respondent father was serving a prison sentence for being an habitual offender, and the mother was incarcerated on drug charges. In the present case, as in [*In re Emmons*, 165 Mich App 701; 419 NW2d 449 (1988)], the respondent

parent was convicted of a crime *against the child*. By contrast, in *Curry*, the parents' convictions were for crimes that did not involve the children, and their criminal acts were not shown to be related to their ability to care for the children. This is an important distinction. Although criminal status *alone* may not be a sufficient basis for the probate court's assumption of jurisdiction, *id*. at 830, in the present case, as in *Emmons*, it is not the respondent's criminal status alone that is alleged to be the basis for the court's jurisdiction, but rather the respondent's violent criminal act against the child, which was directly related to the child's mental well-being and to respondent's ability to care for the child. [*In re Ramsey*, 229 Mich App at 316.]

This Court, therefore, noted a significant distinction between cases when a respondent-parent's criminal acts were perpetrated against their child, and, therefore, relating to their ability to parent that child, and when a respondent-parent's criminal acts are unrelated to their ability to parent their child.

The DHHS notes on appeal that testimony at the adjudication hearing established that respondent-father was diagnosed with cannabis use disorder and alcohol use disorder, which can negatively affect respondent-father's ability to parent TS. However, in *In re Ramsey*, this Court specifically distinguished between a respondent-mother's drug-related criminal acts and a respondent-parent's criminal acts perpetrated against their child. *Id*. Therefore, although respondent-father's substance-use issues may have the ability to negatively impact his parenting abilities, those issues, coupled with his drug-related criminal charges, do not reflect the type of criminal acts that this Court contemplated in *In re Ramsey*, that support a finding of jurisdiction. Therefore, we conclude that the trial court's decision to assume jurisdiction on this basis was clearly erroneous.

In sum, the only allegation in the supplemental petition pertinent to the trial court's exercise of jurisdiction over TS concerned respondent-father's failure to identify appropriate or willing relatives or fictive kin to provide care, custody, or support to TS. However, it is unclear why respondent-father was required to provide an appropriate relative or fictive kin placement when TS was already situated in an appropriate fictive-kin placement. Therefore, the trial court's exercise of jurisdiction over TS was clearly erroneous and reversal is warranted.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Respondent-father next argues that his trial counsel provided ineffective assistance of counsel by failing to object to the hearsay testimony provided by the foster-care supervisor during the adjudication hearing. Respondent-father contends that the foster-care supervisor's testimony that the agency's relative-engagement specialist told her that respondent-father's suggested relatives for placement were unwilling to engage in the assessment process constituted hearsay. Respondent-father further asserts that, had his trial counsel objected to this testimony, the trial court would not have had sufficient evidence to determine that respondent-father failed to identify any appropriate or willing relatives or fictive kin to provide care, custody, or support to TS while he was incarcerated. We agree.

"Although the constitutional provisions explicitly guaranteeing the right to counsel apply only in criminal proceedings, the right to due process also indirectly guarantees assistance of counsel in child protective proceedings." *In re CR*, 250 Mich App 185, 197; 646 NW2d 506 (2002), overruled in part on other grounds by *In re Sanders*, 495 Mich 394; 852 NW2d 524 (2014). Therefore, "the principles of effective assistance of counsel developed in the context of criminal law apply by analogy in child protective proceedings." *In re CR*, 250 Mich App at 197-198. "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). This Court reviews a trial court's factual findings for clear error and reviews de novo questions of constitutional law. *Id*. When no evidentiary hearing on the defendant's ineffective assistance claim has been held, "there are no factual findings to which this Court must defer, and this Court's review is for mistakes that are apparent on the record alone." *People v McFarlane*, 325 Mich App 507, 527; 926 NW2d 339 (2018). "If the record does not contain sufficient detail to support [the] defendant's ineffective assistance claim, then [the defendant] has effectively waived the issue." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002).

"A defendant's right [to effective assistance of counsel] under the Michigan Constitution is the same as that guaranteed by the Sixth Amendment." *People v Aceval*, 282 Mich App 379, 386; 764 NW2d 285 (2009). Our Supreme Court has held that the test iterated in *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984), is the appropriate test for analyzing claims of ineffective assistance of counsel in Michigan. *People v Pickens*, 446 Mich 298, 318-320; 521 NW2d 797 (1994). Under *Strickland*, "establishing ineffective assistance requires a defendant to show (1) that trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced the defendant." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018), citing *Strickland*, 466 US at 688. "[T]o demonstrate that counsel's performance was deficient, the defendant must show that it fell below an objective standard of reasonableness under prevailing professional norms." *People v Riley*, 468 Mich 135, 140; 659 NW2d 611 (2003). To establish prejudice, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Randolph*, 502 Mich at 9 (quotation marks and citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quotation marks and citation omitted).

Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c).[1] "Hearsay is generally prohibited and may only be admitted at trial if provided for in an exception to the hearsay rule." *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010).

At the adjudication hearing, the foster-care supervisor testified that respondent-father identified five people whom he believed were appropriate placements for TS. During direct examination, the foster-care supervisor was questioned about whether any of the named relatives were willing to take TS, to which she responded "no." When asked whether the relatives told this specifically to the foster-care supervisor, she stated that they did not tell her directly; rather, the

---

[1] MRE 801 was amended effective January 1, 2024; the above-provided language is from the previous version in effect at the time of the lower court proceedings.

-6-

agency's "relative-engagement specialist engaged in those conversations." Respondent-father argues this testimony constituted hearsay. In contrast, the DHHS argues that this testimony was offered to show why the agency did not place TS with respondent-father's recommended relatives, rather than to prove the truth of the matter asserted. We conclude that this testimony constituted inadmissible hearsay.

The statements of the relatives that they were unwilling to care for TS were out-of-court statements offered during the adjudication hearing to prove the truth of the matter asserted. The foster-care supervisor was specifically asked whether any of the relatives whom respondent-father recommended were willing to take TS, not why TS was not placed with those relatives. Additionally, the supplemental petition alleged that respondent-father did not identify any appropriate or willing relatives or fictive kin to provide care, custody, or support to TS. It was, therefore, necessary for the DHHS to present evidence at the adjudication hearing to prove this allegation by a preponderance of the evidence. If the foster-care supervisor's testimony was offered merely to explain that TS was not placed with certain relatives, then the DHHS would have failed to provide sufficient evidence to prove the allegation by a preponderance of the evidence. Therefore, this testimony must have been proved to offer the truth of the matter asserted—that the relatives whom respondent-father recommended were unwilling to provide care for TS. This testimony was, therefore, hearsay for which no exception or exemption applies. Accordingly, this testimony was inadmissible hearsay, and respondent-father's trial counsel should have objected to its admission.

Respondent-father's trial counsel's failure to object to this testimony constituted deficient performance because it "fell below an objective standard of reasonableness under prevailing professional norms." *Riley*, 468 Mich at 140. Although there is a strong presumption that an attorney's performance constituted sound trial strategy, the record does not indicate any possible sound trial strategy that trial counsel engaged in by failing to object to this testimony. The DHHS argues that this failure to object to hearsay constituted strategic trial strategy because it left open a window to challenge the trial court's exercise of jurisdiction over TS. The DHHS contends that this conclusion is supported by the fact that trial counsel cross-examined the foster-care supervisor about the availability of respondent-father's recommended relatives to take custody of TS. This does not, however, appear to make logical sense given the fact that, if the testimony was objected to and deemed inadmissible hearsay, then there would have been insufficient evidence to prove the allegations in the supplemental petition by a preponderance of the evidence. This, therefore, does not appear to constitute sound trial strategy.

The DHHS further argues that, even if respondent-father's trial counsel's failure to object to the foster-care supervisor's testimony did not constitute sound trial strategy, his ineffective assistance of counsel claim must still fail because respondent-father cannot show that trial counsel's deficient performance prejudiced him. We disagree. The DHHS notes that, because respondent-father's trial counsel cross-examined the foster-care supervisor about the agency's assessment of respondent-father's recommended relative placements, any hearsay was cumulative and, therefore, nonprejudicial. However, the instant case presents a factual scenario in which the additional testimony on the topic was provided by the same witness and also constituted inadmissible hearsay. During cross-examination, the foster-care supervisor again noted that respondent-father's recommended relatives told the agency's relative-engagement specialist, not the foster-care supervisor herself, that they were unwilling to care for TS. Indeed, the only

testimony provided during the adjudication hearing that respondent-father's recommended relatives were unwilling to care for TS was the foster-care supervisor's testimony. Therefore, this testimony was not cumulative.

Further, if respondent-father's trial counsel objected to the foster-care supervisor's testimony, there is a reasonable probability that the result of the adjudication would have been different. The trial court exercised jurisdiction over TS on the basis that respondent-father did not identify any appropriate or willing relatives to provide for the care and support of TS. Without this testimony, the trial court would not have been presented with any evidence of the willingness and appropriateness of placement with the four relatives whom respondent-father provided to the agency. Therefore, respondent-father's trial counsel's performance was deficient and that deficient performance prejudiced respondent-father. Accordingly, trial counsel provided respondent-father with ineffective assistance of counsel.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Kathleen Jansen
/s/ Kristina Robinson Garrett